*May 9, 2014*                                    *Initials* _____ 

RECEIVED

JUN 1 9 2014

RECEIVED BY MW

MAY 09 2014

## *Addendum to Contract No. 14-003-02*

**PROJECT:**
Wal-Mart 6588 - Slidell
3130 Pontchartrain Dr.
Slidell, LA 70458

**ARCHITECT:**
BRR Architecture, Inc.
6700 Antioch Plaza, Suite 300
Merriam, KS 66204

**GENERAL CONTRACTOR:**
Journeyman Construction, Inc.
7701 N. Lamar, Suite 100
Austin, Texas 78752

**SUBCONTRACTOR:**
Beverly Construction Co., LLC
1215 River Road
Bridge City, LA 70094

This Addendum and the following amendments have been made part of and to Contract No. 14-003-02:
All other modifications made to said contract are void unless agreed to within this addendum.

**Subcontract Agreement:**

**Part I – Scope of Work:**

1. Page 3, Inclusions, Utilities, Item 7, 2nd Line: Strike "Switches".
2. Page 3, Inclusions, Item 10, 1st Line: Strike "concrete headwall". Add "outlet control structure".
3. Page 4, Inclusions, Site Work, Item 7: Add "Blue Top the building pad only. All others will be fine grade +/- .10".
4. Page 4, Inclusions, Site Work, Item 19, 3rd Line: Strike "lime stabilization".
5. Page 4, Inclusions, Site Work, Item 23, 1st Line: Strike "site work areas, etc".

<u>Journeyman Construction, Inc.</u>
**CONTRACTOR**            BY Mike White, VP            JUN 1 0 2014
                                                      **DATE**

<u>Beverly Construction, Co., LLC</u>
**SUBCONTRACTOR**         BY RONALD Schmitt            5/14/14
                            PRESIDENT                  **DATE**

*If you are not in agreement, please contact Amber Kuhaneck at 512-347-2909 or akuhaneck@journeymanco.com to arrange a teleconference with our Vice President Mike White.*



JOURNEYMAN CONSTRUCTION, INC.
*Building Up & Moving Forward*

INITIALS: _____
CONTRACT NO.: 14-003-02
COST CODE NO.: 02-100-S
FED I.D. OR SS#: 72-1434982
SUBCONTRACT AMOUNT: $1,696,775.

## SIGNATURE DOCUMENT

This Subcontract Agreement is made and entered into on this **8th** day of **May 2014** by and between **Journeyman Construction, Inc.**, a Texas corporation, hereinafter referred to as "Contractor" whose address is:

**7701 N. Lamar Blvd., Suite 100**
**Austin, Texas 78752-1012**

| | |
|---|---|
| Attention: | **Lacey Reitzler – lreitzler@journeymanco.com** |
| Phone Number | **512-247-7000** |
| Fax Number | **512-374-2999** |

| | |
|---|---|
| Project Executive: | **Gary Stowe – 512-539-9698 – gstowe@journeymanco.com** |
| Project Manager: | **Jerry Kelley – 214-690-5877 – jkelley@journeymanco.com** |
| Superintendent: | **Ron Webb – 620-704-6333 – rwebb@journeymanco.com** |

and **Beverly Construction Co., LLC, a Louisiana Corporation**, hereinafter referred to as "Subcontractor" whose address is:

| | |
|---|---|
| Physical Address: | **1215 River Road** |
| Physical Address: | **Bridge City, LA 70094** |
| Attention: | **Brad Caillouet** |
| Phone Number: | **504-436-2924** |
| Fax Number: | **504-436-4632** |

In consideration of the terms, covenants and conditions set out herein, Subcontractor and Contractor agree as follows:

**SECTION 1.0** Subcontractor agrees to furnish and install all work as described in Section 3, below, for the project located at:

| | |
|---|---|
| Project Name: | **Wal-Mart #6588 - Slidell** |
| Physical Address: | **3130 Pontchartrain Drive** |
| Physical Address: | **Slidell, LA 70458** |

for the Owner:

| | |
|---|---|
| Owner Name: | **Wal-Mart REBT** |
| Physical Address: | **2001 SE 10th Street, #0550** |
| Physical Address: | **Bentonville, AR 72716-0550** |

hereinafter referred to as "Owner" in accordance with all terms, covenants and conditions of the general contract between the Owner and the Contractor.

**SECTION 2.0** The provisions set forth on Exhibits A, B, C, D, E, F, F-2 and Part IV Additional Provisions of this Subcontract attached hereto, are hereby incorporated into and made a part of this Subcontract.

**SECTION 3.0** Subcontractor and the Contractor agree that the materials to be furnished and scope of the work to be performed by the Subcontractor for the project described above are set forth in the Contract Documents (which consist of this Subcontract, the General Contract between Owner and Contractor, and the other documents attached hereto as Exhibits A, B, C, D, E, F and F-2) and specifically include:

**SIGNATURE DOCUMENT**
**PART I – SCOPE OF WORK**
**PART II – GENERAL TERMS**
**PART III – COMMERCIAL TERMS**
**PART IV- ADDITIONAL PROVISIONS**
**EXHIBITS**
**ATTACHMENTS**
**ADDENDUMS**

and as shown on Project Drawings and Specifications prepared by:

| | |
|---|---|
| Architect Name on Plans: | **BRR Architecture, Inc.** |
| Physical Address: | **6700 Antioch Plaza, Suite 300** |
| Physical Address: | **Merriam, KS 66204** |

all in strict accordance with construction documents, and as more specifically described in the plans and specifications listed on attached Exhibit "A". All work shall be done in accordance with all governing codes, including compliance with all Federal and State Labor Laws, and the progress schedule as determined by the Contractor.

IN WITNESS WHEREOF, the parties hereto have executed this agreement for themselves, their heirs, executors, successors, administrators, and assigns, on the day and year first written above.

| **JOURNEYMAN CONSTRUCTION, INC.** | **BEVERLY CONSTRUCTION CO., LLC** |
|---|---|
| CONTRACTOR | SUBCONTRACTOR |
| BY: _Michael L. White_ | BY: _Ronald Schmitt_ |
| TITLE: Executive Vice President | TITLE: _PRESIDENT_ |
| DATE: **JUN 1 0 2014** | DATE: _5/14/14_ |

**SUBCONTRACTOR'S MOBILIZATION OR COMMENCEMENT OF WORK ON THE PROJECT SITE CONSTITUTES FULL ACCEPTANCE OF ALL TERMS AND CONDITIONS OF THIS SUBCONTRACT AND ALL OF THE PROVISIONS SET FORTH INCLUDING BUT NOT LIMITED TO ALL EXHIBITS, ATTACHMENTS AND ADDENDUMS.**

**SEE ADDENDUM**
**ATTACHED**

# PART I – SCOPE OF WORK

Without limiting the generality implied above, the following items of work are specifically included as part of the scope of work under this Subcontract:

**Division 1 – General Requirements, 2 – Site Construction**
**Utilities:**
**Section 02300 - Earthwork, Section - 02370 – Erosion and Sedimentation Control (Including SWPPP), Section - 02510 – Water Distribution, Section - 02535 – Sanitary Sewage System, Section - 02536 - Sewer Manholes, Frames and Covers, Section - 02630 – Storm Drainage**
**Site Work:**
**Section 02220 - Site Demolition, Section 02230 - Site Clearing, Section 02340 - Soil Stabilization, Section 02715 - Base Course, Section 02740 - Asphaltic Concrete Pavement, Section 02770 - Curbs and Sidewalks**

Furnish all labor, material, equipment, incidentals and supervision necessary to complete all site construction and utilities work in a turnkey manner per plans, specifications and addenda including but not limited to:

**Inclusions:**
1. The cost of a treasury rated payment and performance bond, acceptable to Contractor, is included in the Subcontract Amount. The bond premium is included in the subcontract amount.
2. Subcontractor acknowledges and agrees to have all deviations corrected at the end of the project (or at the end of your portion of the work) within 10 days of notice by the General Contractor or Subcontractor will be subject to $500 per day liquidated damages until such deviations are corrected.

**Utilities:**
3. All layout and survey for scope of work.
4. All services to be brought to structures.
5. All excavation, trench safety, dewatering, boring, backfill & compaction required per contact documents.
6. Pull, pay and coordination required for any necessary permits per local jurisdiction to complete work. (Permits are reimbursable by Wal-Mart). Supply all personal necessary to complete inspection processes.
7. Water distribution (water service (meter set by city), irrigation tap (meter set by City), and fire line service) complete including all pipe, valves, boxes, fittings, enclosures, switches, fire hydrants and assemblies, thrust blocking, backflow preventers, accessories and tie into existing water service for the building and offsite work. Fire riser to be brought inside of the building footprint and capped one (1) foot above the finished floor elevation. Irrigation service for this subcontractor only includes irrigation tap.
8. Sanitary sewer service complete including pipe, fitting, joints, pipe accessories, clean outs, manholes, appurtenances, and connections to existing sanitary sewer systems for the building.
9. All taps, valves and backflow preventers required for irrigation meter.
10. Storm drainage system complete including all pipes and fittings, drainage structures, concrete headwall, and any necessary connections to complete the drainage systems.
11. All specified inspections, testing and sterilization.
12. Subcontractor includes haul-off and disposal of all spoils.
13. Subcontractor acknowledges their participation in the SWPPP program and any repair of BMP's that are damaged due to their negligence.
14. Will give an allowance of 4,125.00 per waterline offset to avoid conflicts.

**Site Work:**

15. All Layout and surveying as required. Contractor to provide benchmark, property corners and building corners.

16. All site clearing and tree preservation as per the plans and specifications.

17. Complete the building pad and appurtenances to include but not limited to the following: excavation, backfill, compaction, base cap, "blue top" stakes and etcetera.

18. Subcontractor agrees to add base cap after all underground plumbing has been installed.

19. Complete all cut/fill for site-work/earthwork for the parking lot, roads, off site-improvements, fuel lot, and site appurtenances, including but not limited to the following; demolition and removal of haul off of spoils for the scope of work, excavation, select fill, base, grading, rolling, lime stabilization, backfilling of site appurtenances.

20. Subcontractor to stockpile a coordinated amount of top-soil onsite for redistribution to all areas, islands, and out lots requiring top-soil after the areas have been graded and are ready for top-soil.

21. Subcontractor to excavate sediment basins SB-1 on Phase 1 of the SWPPP.

22. Subcontractor to provide traffic control, barricades, signs, flagmen, as required during subcontractors own scope of work.

23. Upon completing each of the areas of work (building pad, site work areas, etc.) subcontractor and on-site superintendent will verify the "blue top" staking and certify the area is complete.

24. Subcontractor to supply water and water meter for the scope of work.

25. If subcontractor damages existing asphalt paving, it will need to be repaired at the expense of the subcontractor.

26. Subcontractor will be required to complete all erosion and sedimentation control plan per phasing plan 1 & 2 including construction entrance per the SWPPP plan (Civil Drawings) and specifications immediately upon receipt of the contract and must halt all activities until the SWPPP certification meeting.

27. Subcontractor to be in attendance at the SWPPP certification meeting.

**Exclusions:**

1. None Applicable

**Standard Scope**

1. **Safety**
   a. Subcontractor agrees to and shall provide; a clean and safe work place to its employees, a safety program not reasonably objected to by the Contractor, an English speaking competent person, conformance to all environmental, health and safety regulations, only OSHA approved equipment, all under its control to use PPE including but not limited to; hardhat, safety glasses, reflective vest and sturdy leather shoes, reports of all safety incidents to project superintendent immediately and follow up in writing within 24 hours, 100% fall protection, copies of sign in sheets for all weekly safety meetings, all MSDS documents, all necessary training, storage for all fuels and material in an OSHA/EPA approved manner.
   b. Subcontractor agrees to:
      i. Maintain professional image.
      ii. Keep work areas swept and organized daily.
      iii. Place all trash generated by the crews every day, in the jobsite dumpster provided by Contractor, and/or in the recycle bins, as applicable.
      iv. Agrees to prorated back charges for cleaning the jobsite weekly, if fails to comply with ii) and iii).

     c. Acknowledges that after 48 hours notice to cure has been provided <u>NO</u> other notices or warnings regarding this issue are required.

     d. Subcontractor shall participate in weekly jobsite cleanup.

         i. Composite crew shall consist of one person for every ten workers onsite. If crew size is less than ten, Subcontractor shall contribute one cleanup person.

         ii. Composite cleanup crew will be responsible for general trash cleanup only. Each subcontractor will be responsible to cleanup work area daily.

         iii. Composite cleanup frequency shall be scheduled by Contractor.

## 2. Quality

     a. Subcontractor shall be responsible for quality control of its work, agrees to and shall provide; protection of adjacent surfaces and other trades work, protection of surrounding buildings or work of owner of others subcontractors, coordination of existing underground and overhead utilities prior to starting work, all requests for information in writing.

     b. Subcontract agrees to provide ALL submittals including but not limited to shop drawings, product samples, product data and required mockups within 15 days of execution of this agreement; all submittals are required to be approved no later than 100 days from the General Contractor's notice to proceed whichever is less.

     c. Subcontract agrees to provide all close-out data, submittals, as-builts, attic stock and extra materials within 30 days of completion of Subcontractor's scope of work or within 60 days prior to original substantial completion date provided in Exhibit "C".

## 3. Schedule

     a. Subcontractor acknowledges and agrees that time is of the essence. Subcontract costing for overtime and extended hours is included in this cost to maintain or accelerate schedule as required to meet the original substantial completion date provided in Exhibit "C" plus any applicable time extensions.

     b. Coordinate all work performed during weekends and after normal working hours with superintendent.

## 4. Coordination

     a. As-built documents must be updated weekly on a set of plans in the Journeyman Construction on-site office.

     b. Subcontractor shall schedule all deliveries of on-site storage materials, equipment, tools, sheds, or trailers with Contractor's superintendent prior to delivery or storing of materials or equipment. Any unscheduled deliveries may be denied access into the jobsite and/or required to be relocated at subcontractor's sole expense.

     c. Subcontractor shall coordinate, schedule and cooperate with material testing and inspecting agencies who will verify Subcontractor's compliance with the contract documents. Any re-tests due to failure shall be the responsibility of the Subcontractor.

     d. In the event that this Subcontract's scope of work requires the issuance of a permit, the Subcontractor must schedule all necessary inspections by city, county, and or state officials, including but not limited to underground service alert for utility marking. Such permit fees are included in this subcontract amount.

     e. Provide a regular, full-time, full-duration, dedicated supervisor, the selection of whom is subject to the reasonable objection of the Contractor.

     f. Subcontractor will provide to Contractor a daily report that shall include count of manpower, equipment and task completed.

     g. Subcontractor shall maintain at the project site one copy of all drawings, specifications, addenda, approved submittals, change orders and field modifications related to Subcontractor's work.

     h. Subcontractor prior to commencing any scope work must attend a preconstruction meeting with Contractor to review scopes of work, contract drawings, submittals, specifications and all other pertinent documentation, which may affect Subcontractor's scope of work.

       i. Flagman and applicable roadway construction signs required for all work, including traffic control.

**5. Accounting**

    a. Subcontractor will include the J-1 form (provided with this Subcontract) with each application for payment. The J-1 is to be a complete list of subcontractors or suppliers to be used on this project and must be furnished to Contractor prior to beginning work. This applies to all subcontractors or suppliers of $1,000 or more. Contractor reserves the right to issue joint checks to any and/or all suppliers of the subcontractor.

    b. If a joint check has to be issued to a supplier for nonpayment or due to Subcontractor's untimely payment, then a $50.00 charge per joint check will be charged to the Subcontractor without any notice and credited against the contract amount.

    c. Any and all changes and/or extras must be approved in writing by an officer of the company. Failure to obtain written approval prior to commencement of work waives all rights to compensation.

    d. Provide a schedule of values and forward all required sets of submittals and/or shop drawings for approval prior to start of work.

    e. Subcontractor agrees to specifically allocate 5% of the Subcontract sum or $25,000 whichever is less, towards closeout documents in the schedule of values. This amount shall only be paid upon acceptance of the closeout documents by the Architect and Owner.

    f. As applicable the Subcontractor acknowledges and agrees to comply the prevailing wage rate schedule and terms thereof in specifications. As required the labor rate form is required to be submitted on a once to the Contract Administrator.

**6. Other**

    a. Contractor reserves the right to change its project personnel at any time at its convenience.

    b. Tobacco, food and drinks are not allowed inside any buildings at any time during or after Construction.

    c. Use or possession of illegal drugs or alcohol on the project site is forbidden.

# PART II – GENERAL TERMS

SECTION 4. Subcontractor agrees: To keep himself thoroughly informed as to the progress of the job; to begin work within seven days after notification by the Contractor; to prosecute the work continuously and uninterruptedly with all possible speed; and to complete the entire work covered by this Subcontract within a period of time determined in accordance with Paragraph 18 of the Additional Provisions of subcontract after the work covered hereby is commenced. Subcontractor, however, shall not be held responsible for any delays caused by neglect, delay or default of the Contractor, the Owner, or any other Subcontractor.

If in default of completion within the elapsed time herein specified, the Subcontractor shall pay to the Contractor, as liquidated damages, and not as a penalty, a sum to be determined in accordance with Paragraph 18 of the Additional Provisions for each calendar days delay in completion of the Subcontract, it being agreed between the parties hereto that it would be impracticable or extremely difficult to fix the actual damage.

Subcontractor shall not be entitled to, and hereby expressly waives recovery of, any damages suffered by reason of delays of any nature, and extension of time shall constitute the sole liability of Contractor and Owner and Subcontractor's sole remedy for delays.

4.0 <u>CHANGES:</u> The Scope of Work shall be subject to change by additions, deletions or revisions thereto by Contractor and/or Owner. Subcontractor will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits or other written notification. Written notification shall be in the form of a Subcontract Change Order executed by an authorized Journeyman representative. Only a duly executed Change Order authorizes payment for said change.

4.1 <u>CHANGES INVOLVING THE OWNER:</u> If a change is initiated by the Owner, is caused by or contributed to by the Owner, is reliant upon the Owner for resolution, or Contractor is entitled to or should be entitled to an equitable adjustment under the terms of the General Contract, and said Change, by virtue of the facts and circumstances, necessarily involves and relies on Subcontractor, then Subcontractor distinctly understands and agrees to be bound by the General Contract. Subcontractor shall not be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from the Owner on account of Subcontractor's work. Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner less the Contractor overhead and profit as full satisfaction and discharge of said changes.

4.1.1 Upon receipt of a construction change directive (CCD) from the Owner or a request for quotation from the Contractor, the Subcontractor has no more than three (3) calendar days to submit a price change request (PCR), on the Subcontractor's letterhead, for increases or decreases in the scope of work due to the change order. After this five (5) day period any increases in the Subcontractor's work will be performed without any additional compensation. It is the sole responsibility of the Subcontractor to review all drawings and specifications in a timely manner in order to submit a PCR

to obtain compensation. Once the Contractor has issued an authorization to proceed (ATP) for the changes in the scope, the Subcontractor has five (5) calendar days, whether the work has been completed or not, to submit a subcontractor summary sheet, labor rate worksheet and certified payroll form (WH-247) in order to justify the change request (CR). Below is a detail of all of the forms required.

1. Subcontractor Summary Sheet – This form is required to be submitted with each change order. The "Total Hourly Rate" that is shown on the labor rate computation will be used as the hourly rate on this form.
2. Labor Rate Worksheet – The basic hourly rate is derived from what you pay your employees, per hour, as stated in Box 6 of the certified payroll form (see form attached).
   a. Fringe Benefits - If you provide fringe benefits (i.e. healthcare, 401k, etc.) then it will be included under the fringe benefits portion of this form. You will have to provide documentation to verify the fringe benefits. This could be in a form of a letter signed by the owner / principal of your organization. NOTE: Vacation and holiday pay are not considered fringe benefits and cannot be included as a cost of the change order.
   b. FICA & FUTA - Under the fixed burdens, the FICA and FUTA are the current percentages set by the federal government.

  c. SUTA - The state unemployment tax (SUTA) is a percentage that will be different for every contractor and this can be supported using your state tax filing.

  d. Worker's Comp - The worker's compensation percentage will need to be provided via a schedule of premiums from your workers comp provider.

  e. Total Hourly Rate – This is the "Straight Time" rate used in your Subcontractor Summary Sheet as stated above.

3. Certified Payroll Form (WH-347) – This form is required to be submitted with each change order. If you so choose, the Owner will accept pay stubs in lieu of this form, however, the social security number will need to be blacked out. This is the same form that must be submitted weekly for government contracts

4. Subcontractor must complete and return the labor rate sheet, herein attached, within 10 days of the receipt of this agreement.  All labor rates are subject to the approval of the owner.  Please follow the instruction listed in Section 4 of this agreement in correctly filling out the labor rate sheet.

  4.1.2 The Subcontractor shall request reimbursement for change orders on the basis of actual cost of materials and labor plus a fee, not to exceed 10%. All change orders sent to the Owner are subject to review by the Owner's Representative and/or their estimating department. If they find discrepancies in your labor rate, material costs, material quantities or productivity they will make a recommendation for a revised change order total. Once you are notified of the new change order total, you will have ten (10) calendar days to respond.

4.2 <u>CHANGES NOT INVOLVING THE OWNER:</u> Should a Change in the Subcontract be required between the Contractor and Subcontractor that by virtue of the facts and circumstances necessarily does not involve or rely in any way upon the Owner, then Subcontractor distinctly understands and agrees to be bound by the following:

  4.2.1 Subcontractor shall submit to Contractor within (10) ten working days after receipt of notice of a change, a detailed takeoff with supporting calculations and pricing for the change together with any requested adjustments in the schedule. The pricing shall be itemized as required by the Contractor and shall be in sufficient detail to permit an analysis of all labor, material and equipment and shall cover all work involved in the Change, whether such work was deleted, added or modified. Amounts related to sub-subcontracts shall be supported in similar detail. Subcontractor shall not be entitled to more than 10% Overhead & Profit on account of any change.

  4.2.2 Subcontractor shall not perform changes in the work in accordance with Sections 4.1 and 4.2 until Contractor has approved in writing the pricing for the change and any adjustment in the schedule for performance of the Work, except as set forth in Section 4.2.3.  Upon receiving such written approval from Contractor, Subcontractor shall diligently perform the change in strict accordance with the Subcontract.

  4.2.3 Notwithstanding Section 4.0, Contractor may expressly authorize Subcontractor in writing to perform the change prior to such approval by Contractor.  Subcontractor shall not suspend performance of this Subcontract during the review and negotiation of any change, except as may be directed by Contractor.  In the event Contractor and Subcontractor are unable to reach a timely agreement regarding any change, Subcontractor shall then submit a written Claim clearly itemizing all of the issues in a detailed manner.

  4.2.4 Subcontractor shall not comply with oral changes in the Work.  If Subcontractor believes that any oral notice or instruction received from Contractor will involve a change in cost, time to perform or integrity of the Work, it shall require that the notice or instruction be given in writing and shall comply with the provisions of Sections 4.2.1, 4.2.2 and 4.2.3.  Any costs incurred by Subcontractor to perform oral changes shall be for Subcontractor's account, and Subcontractor waives any and all rights to claim from Contractor or owner for such costs or additional time to perform the work as a result of compliance by Subcontractor with such oral changes.

  4.2.5 The Contractor will approve or reject Claims by written decision, which shall state the reasons therefore and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Contractor shall be final and binding on the parties but subject to mediation and arbitration.

  4.2.6 When a written decision of the Contractor states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to

demand arbitration within said 30 days' period shall result in the Contractor's decision becoming final and binding.

## 4.3 MEDIATION

4.3.1 Any written Claim denied by Contractor or other dispute of any kind or manner arising out of or related to this Subcontract ("Dispute") shall, at Contractor's sole election, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party; provided, however, that nothing in sections 4.3 or 4.4 shall be construed so as to (1) impose any obligation whatsoever on Contractor to demand mediation or arbitration of an affirmative claim or cause of action belonging to Subcontractor, or (2) imply that Subcontractor has the option of instituting legal or equitable proceedings in lieu of arbitration as required by section 4.4.

4.3.2 Any mediation shall, at Contractor's sole election, take place in Austin, Texas, the location of the Project, or any other location deemed appropriate by Contractor in its sole and unfettered discretion.

4.3.3 Unless the parties mutually agree otherwise, the mediation shall be conducted in accordance with the Construction Industry Mediation Rules of the American Arbitration Association in effect at the time any request for mediation is filed. A request for mediation shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

## 4.4 ARBITRATION

4.4.1 Claims or Disputes not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in effect at the time the demand for arbitration is filed. The demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association.

4.4.2 Any arbitration hearing shall, at Contractor's sole election, take place in Austin, Texas, the location of the Project, or any other location deemed appropriate by Contractor.

4.4.3 Subcontractor shall file its demand for arbitration within 30 days of written decision by Contractor or within 30 days of substantial completion as applicable, and in other cases within a reasonable time after the Claim or Dispute has arisen, but in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim or Dispute would be barred by the applicable statute of limitations.

4.4.4 The party filing a demand for arbitration must assert and include in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

4.4.5 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

4.4.6 The arbitrator(s), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, validity, applicability, enforceability or formation of this arbitration agreement including, but not limited to, any claim that all or any part of this arbitration agreement is void, voidable, or unconscionable and any challenge to the validity of this delegation of authority to the arbitrator(s).

4.4.7 The Federal Arbitration Act, Title 9 of the United States Code, shall govern this arbitration agreement.

4.4.8 No state or federal rules of evidence or civil procedure shall be applicable to the arbitration, which shall be conducted exclusively in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association as required by section 4.4.1, unless the parties mutually agree otherwise.

4.4.9 To the fullest extent permitted by applicable law, Contractor may join Subcontractor as a party in any dispute resolution proceeding, whether arbitration, litigation or otherwise, and regardless of venue or jurisdiction, in which the Work or acts or omissions of Subcontractor are in issue.

## 4.5 ATTORNEY'S FEES

4.5.1  In any proceeding arising out of or related to a Claim or Dispute, the Prevailing Party shall be awarded all its attorney fees, filing fees, administration fees, mediation fees, taxable costs including, but not

limited to, deposition costs and service fees, expert fees and expenses, and any other fee, cost, or expense of any kind whatsoever incurred by the Prevailing Party in connection with the proceeding.

4.5.2  For purposes of this section 4.5, "Prevailing Party" means the party that is successful on the merits and is vindicated by any judgment or award rendered. This includes, but is not limited to, a monetary judgment or award, specific performance, rescission, injunctive relief, and declaratory relief, or the successful defense of the main action including, but not limited to, a take-nothing judgment or award on the main issue or issues in the case. If multiple issues are in dispute, the party who receives a judgment or award on the main issue is the prevailing party even if the amount recovered or relief obtained on the claim is nominal or entirely offset by an amount awarded on an opposing party's claim. However, notwithstanding anything herein to the contrary, a plaintiff (or counter-plaintiff) shall never be considered a Prevailing Party unless it is awarded at least 101% of the amount of the last written offer of settlement made by a defendant (or counter-defendant).

# PART III – COMMERCIAL TERMS

SECTION 5. IN CONSIDERATION WHEREOF and for the full and faithful performance of his work, the Contractor agrees to pay the Subcontractor the Subcontract Amount, which is the sum shown on the top right hand corner of the front page **ONE MILLION SIX HUNDRED NINETY SIX THOUSAND SEVEN HUNDRED SEVENTY FIVE DOLLARS ($1,696,775.)** (which includes all applicable tariffs, surcharges, and taxes to fully complete execution of work) in current funds, subject to additions and deductions for changes as may be agreed upon in writing signed by both parties provided that no payments are to be made unless the Subcontractor's rate of progress, work done and material furnished are satisfactory to the Contractor and has herein agreed upon. Subcontractor shall submit to the Contractor on or before the **twentieth** day of each month, requisition for payment in the Contractor's prescribed format and duly notarized accurately reporting the value of work completed to the satisfaction of the Owner during that month. If said requisitions are not delivered by the Subcontractor as above noted, payment may be withheld for 30 days additional time. Payments are to be made as follows:

**CONTRACTOR'S RECEIPT OF PAYMENT FROM THE OWNER IS A CONDITION PRECEDENT TO THE OBLIGATION OF CONTRACTOR TO MAKE PAYMENT TO SUBCONTRACTOR FOR WORK PERFORMED OR MATERIALS FURNISHED. RETAINAGE OF 10% WILL BE WITHHELD FROM ALL PROGRESS PAYMENTS. ALL PAYMENTS TO SUBCONTRACTOR WILL BE MADE WITHIN TEN (10) DAYS OF CONTRACTOR'S RECEIPT OF NEGOTIABLE FUNDS FROM THE OWNER PROVIDED SUBCONTRACTOR HAS COMPLIED WITH ALL TERMS AND CONDITIONS OF THIS SUBCONTRACT, INCLUDING PROVIDING ANY RELEASE OR WAIVER REQUESTED BY CONTRACTOR.**

_____ Initials

**SECTION 6.0** Notwithstanding anything contained herein to the contrary, Contractor may, without cause, terminate this Agreement at any time upon written notice to Subcontractor. In the event Contractor gives Subcontractor such notice, Subcontractor shall withdraw its employees and equipment from the worksite on the effective date of the termination as specified in said notice (which effective date shall not be less than two (2) working days after the date of the notice) regardless of any claim Subcontractor may or may not have against Contractor. Subcontractor's failure to do so shall entitle Contractor to bring an action for damages, including attorney's fees, and/or to bring an action for injunctive relief. If there has been a termination of Contractor's contract with the Owner, Subcontractor shall be paid its proportional share of the amount due from the Owner for its work, as provided in the Contract Documents, conditioned upon payment therefor by the Owner to Contractor. If Contractor's contract has not been terminated, Subcontractor shall be paid the reasonable value of work performed by Subcontractor prior to termination plus reasonable direct close-out costs, but in no event shall Subcontractor be entitled to unabsorbed overhead, anticipatory profits or damages for any termination under this clause except as expressly provided by this paragraph. Upon receipt of payments provided for above, the parties hereto shall have no further obligation to each other except for Subcontractor's obligations to perform corrective and/or warranty work relating to work actually performed by Subcontractor or any of its sub-subcontractors prior to the termination, and to indemnify and defend Contractor as provided for in this Subcontract.

The Subcontractor agrees that in the event of a dispute as to any amount owed under the terms of this Subcontract that Contractor, at Contractor's option may place a sum equal to the disputed amount in escrow with an attorney of Contractor's choice while the parties attempt to resolve the dispute through mediation or arbitration; provided further, that if Contractor places the disputed sums in escrow within thirty days after a written demand for the disputed sums is received, or if no written demand is received, then before any final decision is rendered as a result of the legal actions referred to above, the parties expressly agree that the

placement of the disputed sums in escrow constitutes a sufficient tender under applicable statutes and that, further, Subcontractor voluntarily, knowingly, and intelligently waives the right to seek to recover any penalties and/or attorney's fees as provided for by any applicable State of **Louisiana** statute if the disputed sums are placed in escrow as provided herein.

**SECTION 7.**
**EXCEPT AS OTHERWISE PROVIDED, SUBCONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR AND ANY OTHER PERSON OR ENTITY THAT CONTRACTOR IS REQUIRED TO DEFEND AND INDEMNIFY UNDER THE CONTRACT DOCUMENTS (COLLECTIVELY "THE INDEMNITEES") FROM AND AGAINST ANY AND ALL LOSSES OR LIABILITIES FOR A CLAIM, DAMAGE, EXPENSE, OR GOVERNMENTALLY IMPOSED FINE, PENALTY, ADMINISTRATIVE ACTION, OR OTHER ACTION OF EVERY KIND AND NATURE (COLLECTIVELY "LIABILITIES") ARISING OUT OF OR RELATED TO THE SUBCONTRACT WORK OR THIS SUBCONTRACT, INCLUDING BUT NOT LIMITED TO LIABILITIES ATTRIBUTABLE TO PERSONAL INJURY, DEATH, LOSS OF USE, OR PROPERTY DAMAGE (INCLUDING THE WORK ITSELF), TO THE EXTENT CAUSED BY THE NEGLIGENCE OR FAULT, STRICT LIABILITY, BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, OR BREACH OF CONTRACT (COLLECTIVELY "WRONGFUL CONDUCT") OF OR BY SUBCONTRACTOR, ITS AGENT(S), EMPLOYEE(S), OR SUBCONTRACTOR(S) OF ANY TIER. SUBCONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE INDEMNITEES FROM AND AGAINST ANY AND ALL LIABILITIES ARISING OUT OF OR RELATED TO THE SUBCONTRACT WORK OR THIS SUBCONTRACT, INCLUDING BUT NOT LIMITED TO LIABILITIES ATTRIBUTABLE TO PERSONAL INJURY, DEATH, OR PROPERTY DAMAGE (INCLUDING THE WORK ITSELF), EVEN TO THE EXTENT CAUSED BY THE SOLE, PARTIAL, CONTRIBUTORY, CONCURRENT, OR JOINT WRONGFUL CONDUCT OF THE INDEMNITEES, ANY OF THEIR AGENTS OR EMPLOYEES, AND ANY THIRD PARTIES UNDER THE CONTROL OR SUPERVISION OF THE INDEMNITEES, TO THE EXTENT THIS SUBCONTRACT REQUIRES SUBCONTRACTOR TO OBTAIN INSURANCE TO INSURE SUCH OBLIGATION AND THERE IS EVIDENCE THAT SUBCONTRACTOR RECOVERED THE COST OF THE REQUIRED INSURANCE IN THE CONTRACT PRICE AS PROVIDED BY LA. REV. STAT. § 9:2780.1(I)(1). NOTHING HEREIN SHALL BE CONSTRUED SO AS TO INVALIDATE OR OTHERWISE EFFECT THE ENFORCEABILITY OF ANY CONTRACTUAL REQUIREMENT THAT CONTRACTOR BE NAMED AS AN ADDITIONAL INSURED ON ANY INSURANCE POLICY OBTAINED BY SUBCONTRACTOR AS PROVIDED BY LA. REV. STAT. § 9:2780.1(I)(2).**

**TO THE EXTENT ANY OF THESE OBLIGATIONS VIOLATE APPLICABLE LAW, THE OBLIGATION(S) WILL BE REFORMED OR SEVERED TO THE MINIMUM EXTENT NECESSARY TO COMPLY WITH APPLICABLE LAW IN ORDER TO PROVIDE THE MAXIMUM PROTECTION TO THE INDEMNITEES. THESE DEFENSE AND INDEMNITY OBLIGATIONS SHALL NOT BE LIMITED BY ANY LIMITATION ON THE AMOUNT OR TYPE OF COMPENSATION, BENEFITS OR DAMAGES PAYABLE BY OR FOR SUBCONTRACTOR UNDER ANY WORKERS COMPENSATION OR OTHER BENEFITS LAWS, OR BY THE LIMITS OF ANY INSURANCE OF SUBCONTRACTOR.**

Initials

**GOVERNING LAW.** This Agreement shall be governed and construed in accordance with the laws of the State of Louisiana. The terms of this Subcontract may not be changed unless in writing signed by Contractor.

**SEVERABILITY.** In the event that any provision, term or condition should be found unenforceable, in whole or in part, the unenforceable provision, term or condition shall be severed from the remainder of the Subcontract and the remaining provisions, terms and conditions shall be enforced as agreed between the Contractor and Subcontractor.

**CROSS-DEFAULT AND CROSS-OFFSET.** Contractor and Subcontractor hereby stipulate and agree that any default by Subcontractor under this Subcontract shall constitute a default by Subcontractor under any other agreement by, between or among (a) Contractor and (b) Subcontractor, Subcontractor's parent(s), affiliate(s), successor(s), assignee(s), officer(s), director(s), principal(s), or any other person or entity that Subcontractor can effectively control through ownership of voting stock, interlocking directorships, or otherwise ("Other Agreement"). In such event, Contractor reserves, and Subcontractor expressly consents to, the right of Contractor to offset payment(s) otherwise due Subcontractor under any such Other Agreement against any monies due Contractor pursuant to any of the terms or conditions of this Subcontract. Conversely, Contractor and Subcontractor hereby stipulate and agree that any default by Subcontractor under any such Other Agreement shall constitute a default by Subcontractor under this Subcontract. In such event, Contractor reserves, and Subcontractor expressly consents to, the right of Contractor to offset payment(s) otherwise due Subcontractor under this Subcontract against any monies due Contractor pursuant to any of the terms or conditions of the Other Agreement(s).

# PART IV – ADDITIONAL PROVISIONS

1. "General Contract" as used in this subcontract means the contract between Contractor and the Owner with respect to the work described in Section 1 of this Subcontract, together with all the provisions, general conditions, plans, drawings, specifications, and addenda which are made a part thereof or referred to therein. Copies of all of the foregoing documents are on file at the office of Contractor and are available for inspection at all times.

2. Subcontractor agrees to furnish all material and to perform all work required by this Subcontract strictly in accordance with the General Contract.

3. Insofar as the provisions of the General Contract do not conflict with specific provisions herein contained, they and each of them are hereby incorporated into this Subcontract as fully as if completely re-written herein, except that all of said non-conflicting provisions are amended as follows: wherever the "Owner" is referred to therein, the word "Contractor" shall be substituted therefor and wherever the "Contractor" is referred to therein the word "Subcontractor" shall be substituted therefor. Subcontractor agrees not to violate any term, covenant or condition of said General Contract.

4. Subcontractor shall furnish Contractor with such partial releases and waivers of lien from his materialmen and creditors as Contractor may request from time to time on labor and/or material and/or other claims, and final releases and waivers of lien at the time of final payment on this Subcontract. Final payment to Subcontractor shall be made after the last of the following to occur: (a) completion of the Subcontractor's work, (b) acceptance thereof by the Contractor and Owner, (c) the issuance of a Certificate of Occupancy by the governmental authority having jurisdiction of the Project, (d) final payment by Owner to Contractor, (e) furnishing of evidence satisfactory to the Contractor that there are no claims, obligations, or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred in connection with the Subcontractor's work, (f) delivery of all guarantees, warranties, bonds, instruction manuals, performance charts, diagrams, as–built drawings and similar items required of Subcontractor or its suppliers or subcontractors, (g) delivery of a general release in a form satisfactory to the Contractor, executed by the Subcontractor in favor of the Contractor and Owner, and (h) when bonds are required, release of surety for Contractor to make final payment to Subcontractor.

5. Subcontractor shall furnish, if requested by Contractor, sworn affidavits from time to time, in accordance with the form provided by Contractor, which shall state amounts due or to become due, amounts paid, and any other information to clearly indicate the financial condition of Subcontractor, insofar as it relates to labor and material furnished, and to be furnished, under this Subcontract, and Contractor may take such steps as he may deem necessary to protect himself against any claims. If at any time Contractor shall determine that Subcontractor's financial condition has become, in his opinion, unsatisfactory, Subcontractor shall furnish satisfactory security to Contractor within three days after written notice to his last known address and in default of furnishing said security, Contractor shall have the option to cancel this Subcontract. In case of such cancellation, the rights of Contractor shall be the same as if Subcontractor had failed to perform its material obligations under this Subcontract.

6. Regardless of the terms of payment provided for herein, Contractor shall not be required to make any payments that would leave a balance due to Subcontractor insufficient to cover the retained percentage plus an amount sufficient to satisfy all obligations of Subcontractor for labor, materials, equipment, services, and other items associated with Subcontractor's work, furnished or to be furnished by Subcontractor hereunder.

7. Payments otherwise due may be withheld by Contractor as a result of defective work not remedied, delays caused by Subcontractor for which Subcontractor refuses to accept responsibility, claims filed, reasonable evidence indicating probability of filing of claims, failure of Subcontractor to make payments properly to its subcontractors or for material or labor, or a reasonable doubt that this Subcontract can be completed for the balance of the unpaid Subcontract Amount. If the said causes are not removed within ten (10) days after Contractor gives written notice of the causes to Subcontractor, Contractor may rectify the same at

Subcontractor's expense. Contractor may offset against any sums due Subcontractor hereunder the amount of any liquidated or unliquidated obligations to Subcontractor, whether or not arising out of this Subcontract.

8. Subcontractor agrees that monies received for the performance of this Subcontract shall be used primarily for labor and material entering into this work and said monies shall not be diverted to satisfy obligations of the Subcontractor on other contracts.

**9. Subcontractor agrees to defend, indemnify, reimburse, and save harmless the Owner, Contractor and Contractor's surety from and against all costs or claims for labor, materials, equipment, and all other associated incidental expenses connected with Subcontractor's work, including but not limited to transportation, freight, and express costs, and any and all loss, damage, cost, expense (including attorneys' fees) or other liability of any kind.**

**Please initial on the above clause:**

10. Subcontractor agrees to pay not less than the scale of wages prescribed in the General Contract, or not less than the scale prescribed by law in case the General Contract provides no such scale. If Subcontractor fails to comply with the preceding sentence, Contractor shall have the option to cancel this Subcontract forthwith, in addition to exercising any or all other rights given Contractor hereunder in the event of a breach hereof, including but not limited to all penalties in the General Contract.

11. The right is reserved by Contractor to require changes in, deviations from, additions to, and omissions from the work herein contracted, and the Subcontract Amount shall be adjusted accordingly. Before proceeding with any change, deviation, addition or omission, Subcontractor will first obtain written authorization from Contractor. Subcontractor shall have no dealings with the Owner or his authorized representatives in regard to changes, extras or omissions in connection with this work, but must deal only with Contractor unless otherwise authorized by Contractor in writing.

12. Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of any and all contributions or taxes for Unemployment Insurance and/or Old Age Retirement Benefit, Pensions or Annuities, now or hereafter imposed by the Government of the United States, and/or by the Government of any state or territory of the United States, which are measured by the wages, salaries or other remunerations, paid to persons employed by the Subcontractor on work performed under the terms of this Subcontract.

13. Subcontractor shall route all equipment and materials to be used in the execution of this Subcontract as designated by Contractor, providing the transportation costs are not increased by so doing. It is expressly agreed that the carrier so designated shall be the agent of Subcontractor and not the agent of Contractor.

14. Subcontractor agrees not to remove guards or safety appliances, except on authority of Contractor's Superintendent, and to replace such guards and appliances promptly and correctly. Failure to make such replacement will authorize Contractor to do such work and charge the costs thereof to Subcontractor.

15. This Subcontract includes all changes, addenda, and exhibits, to date and constitutes the entire understanding of the parties and supersedes any prior proposals, understandings, correspondence and/or agreements. No promise or agreement which is not expressed in this Subcontract has been made to any party in executing this Subcontract. Neither Contractor nor Subcontractor, in entering into this Subcontract, is relying on any statement or representation by anyone concerning the terms and conditions of this Subcontract.

16. Subcontractor shall not assign nor subcontract this Subcontract or any part thereof or any interest therein without first obtaining the written consent of the Contractor. Any attempted assignment without such consent will be ineffective and invalid.

17. Subcontractor may not assign or attempt to assign any funds accrued or to accrue under this Subcontract without first obtaining the written consent of Contractor and no such assignment shall be binding on Contractor unless and until accepted in writing by Contractor. Any attempted assignment without such consent will be ineffective and invalid.

18. Subcontractor agrees to prosecute his work, and the several parts thereof at such times and in such order as Contractor considers necessary to keep the same sufficiently in advance of the other parts of the building and to avoid any delay in the completion of the construction as a whole. Subcontractor shall reimburse Contractor for any loss or damage, including but not restricted to any liquidated damages which may become due the Owner under the General Contract, and extra expense paid or incurred by Contractor which is due to (a) Subcontractor's failure to deliver any and all materials and/or supply labor, furnish equipment or services, etc., as required herein, and/or (b) Subcontractor's failure to properly perform any and all work in keeping with the progress of the general construction work, and/or (c) to properly perform any term, covenant or condition contained in this Subcontract. If Subcontractor fails or refuses to proceed with his work as directed by Contractor or fails to perform said work in accordance herewith, in whole or in part, or fails to perform any term, covenant or condition contained in this Subcontract, Contractor, may at Contractor's option, upon 48 hours written notice to the Subcontractor's last known address, take any steps Contractor deems advisable to secure any labor and/or materials, equipment, services, and other aspects of the work, and may take over all of the Subcontractor's equipment, materials, and other instruments necessary to perform the work, and prosecute the work to completion. In case Contractor deems the foregoing procedure necessary, all monies expended and all of the losses, damages and extra expenses, including a reasonable percentage of such costs to cover supervision, handling, administrative costs, insurance, overhead, and other similar expenses, shall be deducted from the Subcontract Amount herein stated, and if such expenditures, together with said losses, damages and extra expenses, including a reasonable percentage of such costs to cover supervision, handling, administrative costs, insurance, overhead, and other similar expenses, exceeds the amount otherwise due to Subcontractor hereunder, Subcontractor agrees to pay to Contractor on demand the full amount of such excess, together with interest thereon at the rate of twelve per cent per annum until paid. A reasonable percentage under this paragraph shall be at least fifteen percent.

19. Subcontractor shall promptly amend and make good any defective materials and/or workmanship to the entire approval and acceptance of Contractor, Owner and/or Architect and their authorized representatives. Should Subcontractor refuse or neglect to proceed at once with the correction of rejected or defective materials and/or workmanship after receiving notice to do so, it is agreed that Contractor shall have the right and power to have the defects remedied or changes made at the expense of Subcontractor, and Subcontractor agrees to pay to Contractor on demand (or Contractor shall deduct from the Subcontract Amount) any and all loss and/or expense paid or incurred by Contractor, including a reasonable percentage of such costs to cover supervision, handling, administration, insurance, overhead, and other similar expenses, in remedying such defects and/or making such changes, together with interest thereon at the rate of twelve per cent per annum, until paid, in addition to all other loss, damage and extra expense which Subcontractor may become liable for under this Subcontract.

20. Subcontractor shall effectually secure and protect his materials and work, and shall bear and be liable for all loss and/or damage of any kind in connection therewith at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of Contractor and subject to the provisions of Section 24 hereof - as they may apply. Subcontractor shall reimburse Contractor on demand for any breakage or other damage to other work or materials occasioned by Subcontractor in the execution of or performance under this Subcontract.

21. If Subcontractor deems that surfaces or work to which his work is to be applied or affixed is unsatisfactory or unsuitable, written notification of said condition shall be given to Contractor before proceeding or taking remedial action, otherwise Subcontractor shall be fully and solely responsible and liable for any and all expense, loss or damage resulting from said condition and Contractor shall be relieved of all liability in connection therewith.

22. Subcontractor shall provide, at his own expense, whatever storage sheds, work shops and offices are necessary for the performance of this Subcontract, and shall remove same and thoroughly clean the premises at the completion of the work.

23. Subcontractor shall clean up and remove from the site as directed by Contractor, all rubbish and debris resulting from his work. Also, Subcontractor shall clean up to the satisfaction of any inspectors all dirt, grease marks, or other similar conditions, from walls, ceilings, floors, fixtures, or other similar locations, deposited or

placed thereon as a result of the execution of or performance under this Subcontract. If Subcontractor refuses or fails to perform this cleaning as directed by Contractor, Contractor shall have the right and power to proceed with said cleaning, and Subcontractor will, on demand, repay to Contractor the actual cost of said labor plus a reasonable percentage of such cost to cover supervision, insurance, overhead, and other similar expenses. A reasonable percentage under this paragraph shall be at least fifteen percent.

24. The provisions of this Subcontract do not make it mandatory that Contractor carry any insurance whatsoever for the benefit of Subcontractor. Subcontractor agrees he will assume the responsibility to determine whether Builder's Risk Insurance is in force.

25. Subcontractor shall furnish promptly all samples, lists, drawings, cuts, schedules and similar items, required in connection with his work, but approval of same does not relieve him of his responsibility of complying with the requirements of the drawings and specifications. All transportation costs on samples and drawings furnished by Subcontractor shall be paid by him.

26. Subcontractor shall furnish all operating instructions and shall guarantee all work performed herein against defective materials and/or workmanship for a period of one (1) year from the date of acceptance by the Owner of the completed General Contract - unless a longer period of guarantee is called for in the Contract Documents.

27. If Subcontractor makes use of Contractor's hoisting facilities, Subcontractor shall pay for this service unless otherwise stated herein.

28. If at any time any controversy shall arise between Contractor and Subcontractor with respect to any matter or thing involved in this Subcontract, and which the parties hereto do not promptly adjust and determine or which the Owner or his authorized representative cannot decide to the satisfaction of both parties hereto, then the written orders of Contractor shall be followed and, upon completion of the work and before the final settlement and payment is made, said controversy shall be decided by mediation and/or arbitration.

29. Subcontractor shall hold and save Contractor harmless from any liability, including costs and expenses including reasonable attorney's fees, for or on account of any patented or unpatented invention, article or appliance manufactured or used in the performance of this Subcontract, including their use by the Owner.

30. Subcontractor shall not place on the work any equipment of which Subcontractor is not sole owner unless Subcontractor obtains written permission from Contractor.

31. Anti-Discrimination -- (a) Subcontractor, in performing the work required by this Subcontract, shall not discriminate against any employees or applicants for employment because of race, creed, color, or national origin. (b) Subcontractor agrees that the provision of paragraph (a) above will also be inserted in all of its subcontracts. For the purpose of this article, a "subcontract" is defined as any contract entered into by Subcontractor with any individual partnership, association, corporation, estate or trust, or other business enterprise or other legal entity, for a specific part of the work to be performed in connection with the supplies or services furnished under this Subcontract; provided, however, that a contract for the furnishing of standard or commercial articles or raw materials shall not be considered as a subcontract.

32. Although drawn by Contractor, this agreement shall in the event of any dispute over its meaning or application, be interpreted fairly and reasonably and neither more strongly for nor against either party.

33. Waiver of any breach hereof shall not constitute a waiver of any subsequent breach of the same or any other provision hereof.

34. Subcontractor agrees to make claims for extension of time to Contractor in the same manner as provided in the General Contract for like claims with Contractor upon the Owner, and in such time as will enable Contractor to present such claims to the Owner for recognition, and Contractor will not be liable to Subcontractor on any claim not timely or properly presented, or until allowed by the Owner.

35. **STATUTORY EMPLOYER ELECTION.** Pursuant to and in accordance with Louisiana Worker's Compensation Act, La. R.S. 23:1021, et seq., including but not limited to R.S. 23:1061, Contractor and Subcontractor agree that a statutory employer relationship exists between Contractor and Subcontractor's employees and Owner and Subcontractor's employees. Contractor and Subcontractor agree that all work performed by Subcontractor and its employees is part of Owner's and Contractor's trade, business or occupation and is an integral part of and is essential to the ability of Owner and Contractor to generate the Owner's and Contractor's goods, products and services. Contractor and Subcontractor agree that Owner and Contractor are principal and statutory employers of Subcontractor's employees. The above notwithstanding, Subcontractor shall remain solely and primarily responsible and liable for the payment of Louisiana worker's compensation benefits and insurance premiums to and for its employees and shall not be entitled to any contribution or indemnity for any such payments from Owner or Contractor.

**INDEX OF DRAWINGS**

| SHEET NO.: | TITLE: | DATE: | REV DATE: |
|---|---|---|---|
| C1 | Cover Sheet | 12/12/2013 | 3/14/2014 |
| N1 | General Information | 12/13/2013 | |
| SP1 | Site Plan | 12/13/2013 | 03/11/2014 |
| SP2 | Site Details | 12/13/2013 | |
| SP2.1 | Bale and Pallet | 12/13/2013 | |
| A1 | Floor Plan | 12/13/2013 | 03/11/2014 |
| A1.1 | Fixture Plans | 12/13/2013 | 03/11/2014 |
| A1.2 | Floor Finish Plan | 12/13/2013 | 03/11/2014 |
| A2 | Exterior Elevations | 12/13/2013 | |
| A2.1 | Exterior Details | 12/13/2013 | 03/11/2014 |
| A2.2 | Exterior Signage and Misc Details | 12/13/2013 | |
| A3 | Exterior Wall Sections | 12/13/2013 | |
| A3.1 | Exterior Wall Sections at Entry | 12/13/2013 | 03/11/2014 |
| A3.2 | Exterior Wall Sections | 12/13/2013 | |
| A3.3 | Exterior Wall Details at Drive-Thru | 12/13/2013 | |
| A4 | Roof Plan | 12/13/2013 | |
| A4.1 | Roof Details | 12/13/2013 | |
| A5 | Enlarged Plans | 12/13/2013 | |
| A5.1 | Enlarged Plans | 12/13/2013 | 03/11/2014 |
| A5.2 | Enlarged Toilet Plans and Details | 12/13/2013 | 03/11/2014 |
| A6 | Interior Elevations | 12/13/2013 | 03/11/2014 |
| A6.1 | Interior Wall Sections and Partition Details | 12/13/2013 | |
| A6.2 | Interior Wall Sections | 12/13/2013 | |
| A7 | Room Finish Schedule and Details | 12/13/2013 | |
| A8 | Door Schedule and Details | 12/13/2013 | |
| A9 | Misc Details | 12/13/2013 | |
| A9.1 | Millwork | 12/13/2013 | |
| PH1 | Pharmacy | 07/11/2013 | |
| PH1.1 | Pharmacy Sections and Details | 07/11/2013 | |
| S0 | General Structural Information | 12/13/2013 | 03/05/2014 |
| S1 | Foundation Plan | 12/13/2013 | 03/14/2014 |
| S1.1 | Slab Plan | 12/13/2013 | 03/14/2014 |
| S2 | Foundation Details | 12/13/2013 | |
| S2.1 | Foundation Details | 12/13/2013 | |
| S3 | Roof Framing Plan | 12/13/2013 | 03/14/2014 |
| S4 | General Schedules and Diagrams | 12/13/2013 | 03/14/2014 |
| S4.1 | Roof Framing Schedules and Details | 12/13/2013 | |
| S4.2 | Roof Equipment Details | 12/13/2013 | |
| S5 | Roof Framing Details | 12/13/2013 | |

## INDEX OF DRAWINGS

| SHEET NO.: | TITLE: | DATE: | REV DATE: |
|---|---|---|---|
| S6 | Vestibule Plan and Details | 12/13/2013 | 03/05/2014 & 03/14/2014 |
| FP1 | Fire Site Utility Plan | 12/13/2013 | |
| FP2 | Overall Fire Sprinkler Plan | 12/13/2013 | 03/05/2014 |
| FP3 | Fire Protection Details | 12/13/2013 | |
| P1 | DWV Plan and Details | 12/13/2013 | 03/05/2014 |
| P2 | Enlarged DWV Plans and Details | 12/13/2013 | 03/05/2014 |
| P3 | Water Plans and Details | 12/13/2013 | 03/05/2014 |
| P4 | Plumbing Risers | 12/13/2013 | 03/05/2014 |
| P5 | Plumbing Schedules | 12/13/2013 | |
| P6 | Siphonic Roof Drainage | 12/13/2013 | |
| M1 | HVAC Plan and Details | 12/13/2013 | |
| M2 | Enlarged HVAC Plans and Details | 12/13/2013 | 03/05/2014 |
| M3 | Mechanical Schedules and Details | 12/13/2013 | 03/05/2014 |
| M4 | Exhaust Hood | 12/13/2013 | |
| EM1 | Energy Management Plan | 12/13/2013 | |
| EM2 | Sequences of Operations | 12/13/2103 | |
| REM1 | Refrig Energy Management Plan | 12/13/2103 | 12/27/2013 |
| REM2 | Refrig Energy Management Plan | 12/13/2013 | |
| REM3 | Refrig Leak Detection Plan and Details | 12/13/2013 | |
| R1 | Refrig Plan | 12/13/2103 | 12/27/2013 & 03/05/2014 |
| R2 | Refrig Schedules | 12/13/2013 | |
| R3 | Refrig Details | 12/13/2013 | |
| R4 | Refrig Submittal | 12/13/2013 | 12/27/2014 |
| R5 | Refrig Submittal | 12/13/2013 | 12/27/2014 |
| E1 | Lighting Plan | 12/13/2013 | |
| E1.1 | Enlarged Lighting Plans | 12/13/2013 | 03/05/14 |
| E1.2 | Lighting Details and Site Lighting | 12/13/2013 | |
| E2 | Power Plan | 12/13/2013 | |
| E2.1 | Enlarged Power Plans | 12/13/2013 | 03/05/2014 |
| E2.2 | Enlarged Power Plans | 12/13/2013 | |
| E3 | Electrical Details, Symbols, and Schedules | 12/13/2013 | |
| E4 | One-Line Diagram, Details, and Schedules | 12/13/2013 | 12/27/2013 |
| E4.1 | Panelboard Schedules | 12/13/2103 | |
| RE1 | Refrig Electrical Plan | 12/13/2013 | |
| C-0 | Coversheet | 04/22/2014 | |
| B.I.C | Plat Showing Survey | 01/15/2014 | |
| INT | ALTA/ACSM Land Title Survey | | |
| SW-1 | SWPPP Notes | 04/22/2014 | |

**INDEX OF DRAWINGS**

| SHEET NO.: | TITLE: | DATE: | REV DATE: |
|---|---|---|---|
| SW-2 | SWPP Implementation Sequence and Limits of Work | 04/22/2014 | |
| SW-3 | Phase 1 Erosion and Sedimentation Control Plan | 04/22/2014 | |
| SW-4 | Phase 2 Erosion and Sedimentation Control Plan | 04/22/2014 | |
| SW-5 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| SW-6 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| SW-7 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| SW-8 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| SW-9 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| SW-10 | Erosion and Sedimentation Control Details | 04/22/2014 | |
| PH-1 | Phasing Plan | 04/22/2014 | |
| D-1 | Demolition Plan | 04/22/2014 | |
| D-1.1 | Fuel Outlot Demolition Plan | 04/22/2014 | |
| PV-1 | Asphalt Pavement Plan | 04/22/2014 | |
| PV-2 | Concrete Pavement Plan | 04/22/2014 | |
| C-1 | Site Plan | 04/22/2014 | |
| C1.1 | Fuel Outlot Site Plan | 04/22/2014 | |
| C-2 | Grading Plan | 04/22/2014 | |
| C2.1 | Fuel Outlot Grading Plan | 04/22/2014 | |
| C-3 | Utility Plan | 04/22/2014 | |
| C3.1 | Fuel Outlot Utility Plan | 04/22/2014 | |
| C-5 | Pavement Markings and Signage Detail Sheet | 04/22/2014 | |
| C-6 | Site Pavement Detail Sheet | 04/22/2014 | |
| C-7 | Utility Detail Sheet | 04/22/2014 | |
| C-9 | Drainage Detail Sheet | 04/22/2014 | |
| C-10 | Drainage Detail Sheet | 04/22/2014 | |
| SL-1 | Site Lighting Plan | 04/22/2014 | |
| L-1.0 | Landscape Plan | 04/22/2014 | |
| L-1.1 | Landscape Details | 04/22/2014 | |
| L-2.0 | Irrigation Plan | 04/22/2014 | |
| L-2.1 | Irrigation Details | 04/22/2014 | |
| RD-1 | Driveway Entrance Pavement Plan | 04/24/2014 | |
| RD-2 | Driveway Entrance Striping Plan | 04/24/2014 | |

Project Manual Dated 12/13/2013
Addendum #1 Dated 03/14/2014
Addendum #2 Dated 03/14/2014

**EXHIBIT 'B'**

SUBCONTRACTOR has acknowledged and included within this Subcontract:

1. Escalation cost for all labor, materials and equipment for the duration of the Subcontract.

2. All hoisting as required for completion of Subcontractor's work.

3. All layout required for Subcontractor's work from reference points established by Contractor. Subcontractor shall coordinate its work with all trades to ensure proper installation.

4. All rubbish, debris and other material resulting from Subcontractor's work shall be continuously removed.

5. All submittals required for this project will be provided by the Subcontractor as required by the Contractor for submission to Architect and Owner for review. Submittals must be received in such a manner as to prevent delays. Products will be tabbed and indexed on the cover of each copy. All applicable items will be highlighted.

6. Subcontractor shall man the job at all times required by Contractor's schedule and shall provide adequate supervision of all work performed by its employees, vendors, agents or suppliers to the end that the work may not be interrupted by labor disputes. Subcontractor shall employ only such labor as to the satisfaction of Contractor, which will work in harmony with other trades on the project.

7. Subcontractor is responsible for its employees parking. The cost of Subcontractor's employee parking is included in the subcontract amount.

8. There is limited storage on-site because of site conditions. Materials are to be stored off-site unless specific arrangements are made with Contractor's Site Superintendent. Cost of temporary storage is included in the Subcontract Amount.

9. Subcontractor agrees to review all subsequent issues of Architect's drawings and specifications within one (1) week of the date sent to Subcontractor for any revisions or changes. These drawings will be sent by formal notice including the list of drawings and the date of revision. These revised drawings shall become contract documents and all work contained therein will be included within this Subcontract unless Contractor receives a claim for revision within the one (1) week period. Only those claims received within the one (1) week period will be considered. Work on any changes for which claims have been submitted shall not be commenced until a signed order for said work is issued by Contractor or until other resolution is made concerning such claim for change.

10. All work performed under this Subcontract shall conform to all applicable OSHA requirements.

11. This Subcontract is subject to applicable laws, executive orders, and regulations relating to equal employment opportunity and nondiscrimination in employment. The parties hereto shall not discriminate in their employment practices against any persons because of race, religion, color, sex, national origin, age or handicap, and agree to comply with such laws, orders, and regulations to the extent applicable in the performance of work or furnishing of services, materials or supplies hereunder.

12. The Equal Employment Opportunity clause set forth in the Executive Order 11246 and similar clauses required by other Executive Orders, statutes or regulations, to the extent applicable, are hereby incorporated by reference.

13. Applicable sales and use taxes are included.

14. Subcontractor shall inspect existing conditions prior to commencement of this work and shall notify Contractor of preexisting conditions which preempt proper installation of his work in sufficient time to permit Contractor to take corrective action to maintain the construction schedule. Commencement of work shall constitute acceptance of all underlying conditions.

15. If Contractor requires performance, material and labor payment bonds, Subcontractor shall provide it. Unless otherwise provided for elsewhere, reimbursement for said bond will be made by issuance of an additive change order. Bond premium shall not exceed one percent (1%) of the Subcontract Amount.

16. Time is of the essence. Subcontractor shall do all work necessary to comply with Contractor's construction schedule.

17. **INSURANCE.** See Exhibit "D"

18. SHOP DRAWINGS/SUBMITTALS. Subcontractor shall prepare and submit to Contractor <u>a list of all submittals required for his work and a schedule</u>, which Subcontractor will follow for these submissions, within 72 hours of the execution of this subcontract. Subcontractor's schedule shall permit three (3) week review period and all fabrication time required in order to meet Contractor's construction schedule. Time is of the essence.

## EXHIBIT 'C'

The complete project date is **August 30, 2014**. The schedule for work related to this Subcontract Agreement shall be prescribed by the General Contractor.

Contact the project superintendent for updated and detailed progress schedule.

## 1.    Specific Insurance Requirements

The following insurance shall be maintained in effect with limits not less than those set forth below at all times during the term of this Agreement and thereafter as required:

| Insurance | Coverage/Limits | Other Requirements |
|---|---|---|
| Commercial General Liability (Occurrence Basis) | • $1,000,000 Per Occurrence<br>• $2,000,000 General Aggregate<br>• $2,000,000 Products/Completed Operations Aggregate<br>• $1,000,000 Personal And Advertising Injury<br>• Designated Construction Project(s) General Aggregate Limit | • Current ISO edition of CG 00 01<br>• The personal injury contractual liability exclusion shall be deleted.<br>• Additional insured status shall be provided in favor of Contractor Parties on ISO forms CG 20 10 10 01 and CG 20 37 10 01, or on substitute endorsement(s) providing equivalent coverage. For purposes of this additional insured requirement, equivalent coverage means coverage for liability arising out of Subcontractor's work performed for Contractor, including coverage for the negligence or fault of Contractor or Owner as to bodily injury or death of an employee or agent of Subcontractor or Subcontractor's subcontractor, including products-completed operations hazard.<br>• This coverage shall be endorsed to provide primary and non-contributory liability coverage.<br>• This policy shall be endorsed to provide thirty (30) days prior written notice of cancellation of coverage to Contractor.<br>• The following exclusions/limitations (or their equivalent(s), are prohibited:<br>  o Contractual Liability Limitation CG 21 39<br>  o Amendment of Insured Contract Definition CG 24 26<br>  o Limitation of Coverage to Designated Premises or Project, CG 21 44<br>  o Exclusion-Damage to Work Performed by Subcontractors On Your Behalf, CG 22 94 or CG 22 95<br>  o Any Construction Defect Completed Operations exclusion<br>  o Any endorsement modifying or deleting the exception to the Employer's Liability exclusion<br>  o Any endorsement deleting or modifying coverage for explosion, collapse or underground work<br>  o Any "Insured vs. Insured" exclusion<br>  o Any Punitive, Exemplary or Multiplied Damages exclusion<br>  o Any Residential or Habitational exclusion if such work is to be performed<br>  o Any Subsidence exclusion |
| Business Auto | $1,000,000 Per Accident | • Current ISO edition of CA 00 01 |

| | | |
|---|---|---|
| Liability | | • Arising out of any auto (Symbol 1), including owned, hired and nonowned |
| Workers' Compensation and Employer's Liability | • Statutory Limits<br>• $1,000,000 Each Accident and Disease<br>• USL&H must be provided where such exposure exists. | • State where work is to be performed must be listed under Item 3.A. on the Information Page.<br>• Such insurance shall cover liability arising out of the Subcontractor's employment of workers and anyone for whom the Subcontractor may be liable for workers' compensation claims. Workers' compensation insurance is required, and no "alternative" forms of insurance shall be permitted.<br>• Where a Professional Employer Organization (PEO) or "leased employees" are utilized, Subcontractor shall require its leasing company to provide Workers' Compensation insurance for said workers and such policy shall be endorsed to provide an Alternate Employer endorsement in favor of Subcontractor. Where Subcontractor uses leased employees with Workers' Compensation insurance provided by a PEO or employee leasing company, Subcontractor is strictly prohibited from subletting any of its work without the express written agreement of Contractor. |
| Excess / Umbrella Liability (Occurrence Basis) | $1,000,000 Each Occurrence | • Such insurance shall be excess over and be no less broad than all coverages described above.<br>• Such insurance shall be endorsed to be primary and non-contributory to any liability insurance, whether primary, excess / umbrella, held by the Contractor Parties.<br>• Drop-down coverage shall be provided for reduction and/or exhaustion of underlying aggregate limits and shall include a duty to defend any insured. |
| | | |

## 2. General Insurance Requirements

### A. Definitions. For purposes of this Agreement:

i. "Contractor Parties" means (a) Journeyman Construction, Inc. ("Contractor"), (b) the Owner, (c) the General Contractor (if different from the Contractor), (d) any lender whose loan is secured by a lien against the Work, (e) their respective shareholders, members, partners, joint venturers, affiliates, subsidiaries, successors and assigns, (f) any directors, officers, employees, or agents of such persons or entities, and (g) others as required by the Construction Documents.

ii. "Subcontractor" shall include subcontractors of any tier.

iii. "ISO" means Insurance Services Office.

### B. Policies.

i. Subcontractor shall maintain such General Liability and Excess / Umbrella Liability in identical coverage, form and amount, including required endorsements, for at least ten (10) years following

Date of Substantial Completion of the Work to be performed under this Agreement. Subcontractor shall provide written representation to Contractor stating Work completion date.

    ii.  It is the intent of the parties to this Agreement that all General Liability and Excess / Umbrella insurance coverage required herein shall be primary and non-contributory to any liability insurance, whether primary, umbrella or excess, held by the Contractor Parties. It is the specific intent that all insurance held by Contractor Parties' shall be excess, secondary and non-contributory.

    iii.  All policies must:

        a.  Be written through insurance companies authorized to do business in the State in which the work is to be performed and rated no less than A-: VII in the most current edition of A. M. Best's Key Rating Guide.

        b.  Provide a waiver of subrogation in favor of Contractor Parties on all insurance coverage carried by Subcontractor, whether required herein or not

        c.  Be provided to the Contractor Parties in compliance with the requirements herein and shall contain no endorsements that restrict, limit, or exclude coverage required herein in any manner without the prior express written approval of the Contractor.

    iv.  Failure of Contractor to demand such certificate or other evidence of full compliance with these insurance requirements or failure of Contractor to identify a deficiency from evidence that is provided shall not be construed as a waiver of the Subcontractor's obligation to maintain such insurance.

    v.  Subcontractor shall provide to the Contractor a certified copy of all insurance policies required herein within ten (10) days of any such request. Renewal policies, if necessary, shall be delivered to the Contractor prior to the expiration of the previous policy.

    vi.  Commencement of Work without provision of the required certificate of insurance and/or required endorsements, or without compliance with any other provision of this Agreement, shall not constitute a waiver by any Contractor Party of any rights. The Contractor shall have the right, but not the obligation, of prohibiting the Subcontractor or any sub-subcontractor from performing any Work until such certificate of insurance and/or required endorsements are received and approved by the Contractor.

**C. <u>Limits, Deductibles and Retentions</u>**

    i.  The limits of liability may be provided by a single policy of insurance or by a combination of primary and excess / umbrella policies, but in no event shall the total limits of liability available for any one occurrence or accident be less than the amount required herein.

    ii.  No deductible or self-insured retention shall exceed $25,000 without prior written approval of the Contractor, except as otherwise specified herein. All deductibles and/or retentions shall be paid by, assumed by, for the account of, and at the Subcontractor's sole risk. The Subcontractor shall not be reimbursed for same

**D. <u>Forms</u>**

    i.  If the forms of policies, endorsements, certificates or evidence of insurance required by this Exhibit are superseded or discontinued, Contractor will have the right to require other equivalent forms.

    ii.  Any policy or endorsement form other than a form specified in this Exhibit must be approved in advance by Contractor.

    iii.  If the Additional Insured requirements are deemed to be in violation of any law, ordinance or statute, the Additional Insured requirements, including any additional insured provisions or endorsements procured pursuant to this Agreement, shall be reformed to provide the maximum amount of protection to the Contractor Parties as allowable under the law.

**E. <u>Evidence of Insurance</u>**. Insurance must be evidenced as follows:

    i.  ACORD Form 25 Certificate of Liability Insurance, or any other form approved by the Texas Department of Insurance, for liability coverages.

    ii. Evidence shall be provided to Contractor prior to commencing Work and prior to the expiration of any required coverage.

    iii. Approved Certificate Form shall specify:

        a. Contractor as certificate holder at Contractor's mailing address;

        b. Insured's name, which must match that on this Agreement;

        c. Insurance companies producing each coverage and the policy number and policy date of each coverage;

        d. Producer of the certificate with correct address and phone number and have the signature of the authorized representative of the producer;

        e. Additional Insured status in favor of Contractor Parties;

        f. Amount of any deductible or self-insured retention in excess of $25,000;

        g. Designated Construction Project(s) General Aggregate Limit;

        h. Personal Injury Contractual Liability;

        i. Primary and non-contributory status;

        j. Waivers of subrogation; and

        k. All exclusions and limitations added by endorsement to the General Liability and Excess / Umbrella coverage.

    iv. Copies of the following policy provisions and/or endorsements shall also be provided: (i) Additional Insured status; (ii) 30 Day Notice of Cancellation, and (ii) Schedule of Forms and Endorsements pages applicable to the General Liability and Excess / Umbrella policies.

## F. Subcontractor Insurance Representations to Contractor Parties

    i. It is expressly understood and agreed that the insurance coverages required herein (a) represent the minimum requirements and are not to be construed to void or limit the Subcontractor's indemnity obligations as contained in this Agreement nor represent in any manner a determination of the insurance coverages the Subcontractor should or should not maintain for its own protection; and (b) are being, or have been, obtained by the Subcontractor in support of the Subcontractor's liability and indemnity obligations under this Agreement. Irrespective of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of the Subcontractor, or the failure of any insurance company to pay claims accruing, shall not be held to affect, negate or waive any of the provisions of this Agreement.

    ii. Failure to obtain and maintain the required insurance shall constitute a material breach of, and default under, this Agreement. If the Subcontractor shall fail to remedy such breach within five (5) business days after notice by the Contractor, the Subcontractor will be liable for any and all costs, liabilities, damages and penalties resulting to the Contractor Parties from such breach, unless a written waiver of the specific insurance requirement(s) is provided to the Subcontractor by the Contractor. In the event of any failure by the Subcontractor to comply with the provisions of this Agreement, the Contractor may, without in any way compromising or waiving any right or remedy at law or in equity, on notice to the Subcontractor, purchase such insurance, at the Subcontractor's expense, provided that the Contractor shall have no obligation to do so and if the Contractor shall do so, the Subcontractor shall not be relieved of or excused from the obligation to obtain and maintain such insurance amounts and coverages.

    iii. This Exhibit is an independent contract provision and shall survive the termination or expiration of the Construction Agreement.

## G. Insurance Requirements of Subcontractor's Sub-subcontractors

    i. Insurance similar to that required of the Subcontractor shall be provided by all sub-subcontractors (or provided by the Subcontractor on behalf of sub-subcontractors) to cover operations performed under any subcontract agreement. The Subcontractor shall be held responsible for any modification in these insurance requirements as they apply to sub-subcontractors. The Subcontractor shall maintain certificates of insurance from all sub-subcontractors containing provisions similar to those

listed herein (modified to recognize that the certificate is from sub-subcontractors) enumerating, among other things, the waivers of subrogation, additional insured status, and primary liability as required herein, and make them available to the Contractor upon request.

ii. The Subcontractor is fully responsible for loss and damage to its property on the site, including tools and equipment, and shall take necessary precautions to prevent damage to or vandalism, theft, burglary, pilferage and unexplained disappearance of property. Any insurance covering the Subcontractor's or its sub-subcontractor's property shall be the Subcontractor's and its sub-subcontractor's sole and complete means or recovery for any such loss. To the extent any loss is not covered by said insurance or subject to any deductible or co-insurance, the Subcontractor shall not be reimbursed for same. Should the Subcontractor or its sub-subcontractors choose to self insure this risk, it is expressly agreed that the Subcontractor hereby waives, and shall cause its sub-subcontractors to waive, any claim for damage or loss to said property in favor of the Contractor Parties.

## H. Use of the Contractor's Equipment

The Subcontractor, its agents, employees, sub-subcontractors or suppliers shall use the Contractor's equipment only with express written permission of the Contractor's designated representative and in accordance with the Contractor's terms and condition for such use. If the Subcontractor or any of its agents, employees, sub-subcontractors or suppliers utilize any of the Contractor's equipment for any purpose, including machinery, tools, scaffolding, hoists, lifts or similar items owned, leased or under the control of the Contractor, the Subcontractor shall defend, indemnify and be liable to the Contractor Parties for any and all loss or damage which may arise from such use and shall procure any necessary insurance to protect Contractor Parties.

## I. Release and Waiver

The Subcontractor hereby releases, and shall cause its sub-subcontractors to release, the Contractor Parties from any and all resulting in or from or in any way connected with any loss covered by insurance, whether required herein or not, or which should have been covered by insurance required herein, including the deductible and/or uninsured portion thereof, maintained and/or required to be maintained by the Subcontractor and/or its sub-subcontractors pursuant to this Agreement.

**Notice of Requirement for Affirmative Action to Ensure Equal Employment Opportunity (Executive Order 11246)**

1.    The Offeror's or Bidder's attention is called to the "Equal Opportunity Clause" and the "Standard Federal Equal Employment Specifications" set forth herein.

2.    The goals and timetables for minority and female participation, expressed in percentage terms for the Contractor's aggregate workforce in each trade on all construction work in the covered area, are as follows:

| Timetables | Goals for minority participation for each trade | Goals for female participation for each trade |
|---|---|---|
| January 21, 2014- January 20, 2015 | 31.0% | 6.9% |

These goals are applicable to all the Contractor's construction work (whether or not it is Federal or federally assisted) performed in the covered area. If the contractor performs construction work in a geographical area located outside of the covered area, it shall apply the goals established for such geographical area where the work is actually performed. With regard to this second area, the contractor also is subject to the goals for both its federally involved and non-federally involved construction.

The Contractor's compliance with the Executive Order and the regulations in 41 CFR Part 60-4 shall be based on its implementation of the Equal Opportunity Clause, specific affirmative action obligations required by the specifications set forth in 41 CFR 60-4.3(a), and its efforts to meet the goals. The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade, and the contractor shall make a good faith effort to employ minorities and women evenly on each of its projects. The transfer of minority or female employees or trainees from Contractor to Contractor or from project to project for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, the Executive Order and the regulations in 41 CFR Part 60-4. Compliance with the goals will be measured against total work hours performed.

3.    The Contractor shall provide written notification to the Director of the Office of Federal Contract Compliance Programs within 10 working days of award of any subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the name, address and telephone number of the subcontractor; employer identification number of the subcontractor; estimated dollar amount of the subcontract; estimated starting and completion dates of the subcontract; and the geographical area in which the subcontract is to be performed.

4.    As used in this Notice, and in the contract resulting from this solicitation, the "covered area" is St. Tammany Parish, Slidell, Louisiana.

# Immigration Law Compliance Plan
## *Wal-Mart Projects*

## Introduction

Pursuant to the Agreement(s) between Wal-Mart Stores, Inc. ("Wal-Mart") and Journeyman Construction, Inc. ("JCI"), and the Agreement(s) between JCI and _BEVERLY CONSTRUCTION_ ("Subcontractor"), Subcontractor hereby implements this Immigration Law Compliance Plan (hereinafter "Compliance Plan") for Wal-Mart projects. This Compliance Plan shall be kept by Subcontractor and, upon the request of Wal-Mart or JCI, a copy of the Compliance Plan shall be provided to JCI. Subcontractor also shall require and cause its sub-subcontractors (at any tier) to comply with this Compliance Plan (or to develop and comply with a separate written Compliance Plan which addresses all the requirements, items, and matters addressed in this Compliance Plan) at all times while performing work on any Wal-Mart Project(s).

## I. Purpose

Subcontractor is committed to full compliance with the Immigration Reform and Control Act of 1986, as amended, the Immigration and Nationality Act, as amended, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, and all other applicable immigration laws, rules and regulations ("Immigration Laws"). Subcontractor has taken and will take all appropriate steps to ensure that its employees and the employees of its sub-subcontractors (at any tier) who perform work on any Wal-Mart project(s) are in compliance with the Immigration Laws.

## II. Compliance Procedures

1. Form I-9 Verification

a. Subcontractor Employees

As part of this Compliance Plan, Subcontractor will take steps to ensure that the Form I-9s for its employees working on the Wal-Mart Project(s) have been, and are, completed as required by the Immigration Laws. Subcontractor will examine the identity and work eligibility documents of its employees upon hire and certify on the Form I-9s, within the time required by the Immigration Laws, that it has done this examination. Subcontractor also will retain photocopies of all supporting identity and work eligibility documents for all employees who are hired by Subcontractor after Subcontractor is awarded work on the Wal-Mart Project(s).

Subcontractor will provide to JCI a copy of the I-9 verification and photo for those employees who work on the Wal-Mart project. Subcontractor also will implement a system designed to ensure reverification of the Form I-9s for those employees on the Wal-Mart Project(s) whose Form I-9s must be reverified by law.

b. Sub-subcontractor Employees

Additionally, Subcontractor will take steps to ensure that the Form I-9s for its sub-subcontractors employees working on the Wal-Mart Project(s) have been, and are, completed as required by the Immigration Laws. Subcontractor will examine and provide to JCI I-9 verification and photos of its sub-subcontractors employees provided by the sub-subcontractor, prior to JCI issuing a badge or the Subcontractor allowing those individuals to work on a Wal-Mart project(s). Subcontractor also will retain photocopied redacted Form I-9s for all sub-

subcontractors employees working on Wal-Mart Project(s). Subcontractor also will implement a system designed to ensure reverification of the Form I-9s for those sub-subcontractors employees on the Wal-Mart Project(s) whose Form I-9s must be reverified by law.

2. Form I-9 Compliance Training

In an effort to comply with all Form I-9 requirements, Subcontractor has provided, or prior to commencing work on the Wal-Mart Project(s) will provide, Form I-9 compliance instruction and training to its employees who are, or will be, responsible for Subcontractor's Form I-9 administration on the Wal-Mart Project(s).

Subcontractor also will provide suitable training and instruction regarding Form I-9 compliance procedures to other employees who may be given such responsibility later. Subcontractor also will provide refresher Form I-9 compliance training as appropriate.

3. Verification Program

Pursuant to the Agreement between JCI and Wal-Mart; and JCI and Subcontractor, Subcontractor is implementing a verification program designed to ensure that all of its employees and the employees of its sub-subcontractors working on any Wal-Mart Project site are in compliance with the Immigration Laws.

Subcontractor understands that each of the employees performing work on the Wal-Mart Project must be certified by Subcontractor in writing within seventy-two (72) hours after such employee has started work on the Wal-Mart Project. Subcontractor also understands that, if such individual is not certified within that 72-hour period, Subcontractor must remove the individual from the Wal-Mart Project and retrieve the Badge provided to the individual pursuant to the Access Control/Badge Procedures described below. Subcontractor also understands and agrees that the individual will not be allowed to resume work on the Wal-Mart Project until it has certified the individual pursuant to this Verification Program, without the benefit of the 72-hour verification period.

## III. Access Control/Badge Procedures

Pursuant to the Agreement between JCI and Wal-Mart; and JCI and Subcontractor, Subcontractor has implemented Access Control/Badge Procedures for its Wal-Mart Project(s). As part of these Access Control/Badge Procedures, Subcontractor cannot allow any direct employees or the employees of sub-subcontractor employees to enter any Wal-Mart Project jobsite without a Badge issued pursuant to certain requirements set out in the Agreement. Subcontractor can issue a Badge to an employee only if Subcontractor has made the certification required under the Verification Program described above or the employee has been on the jobsite for less than 72 hours and is in the process of being certified by Subcontractor.

## IV. ICE Educational Programs and Training and Pilot Programs

As part of this Compliance Plan, Subcontractor agrees to allow United States Immigration and Custom Enforcement ("ICE") to present educational programs and training for its employees and staff. Subcontractor also is willing to participate in pilot programs developed by ICE.

## V. Certification Regarding ICE Enforcement

Subcontractor hereby certifies that it has not been the subject of enforcement or other action by ICE within the two year period prior to the signing of the Agreement or the first date any employee performs any work on the Wal-Mart Project(s), whichever is earlier.

## VI. Participation in the Audits Required by the Construction Contract(s)

Subcontractor understands that, under JCI's Agreement with Wal-Mart, Wal-Mart has the right to require certain I-9 compliance audits of the employees of Subcontractor, or of the employees of any sub-subcontractor being used by

Subcontractor at the Wal-Mart Project(s). Any such audits will be conducted by an independent auditor proposed by Subcontractor and accepted by JCI and Wal-Mart. Subcontractor will participate in and comply with the requirements for, and shall cause and require its sub-subcontractors and (at any tier) to participate in and comply with the requirements for any audits conducted pursuant to Sections 19(d)(iv) and (v) of JCI's Agreement with Wal-Mart.

_Ronald Schmitt_
Name

_President_
Position

_5/14/14_
Date

## EMPLOYMENT VERIFICATION

**IMMIGRATION COMPLIANCE:** Subcontractor is solely responsible to ensure that all of its personnel who perform services on the project are authorized to accept employment with Subcontractor. Subcontractor understands and agrees that it is responsible for ensuring compliance with the Immigration Reform and Control Act of 1986 ("IRCA"), and the Immigration and Nationality Act of 1990 ("INA"), as amended. Subcontractor agrees to comply fully with the verification requirements for all employees and avoid knowingly hiring or continuing to employ persons unauthorized for employment, in addition to all other requirements of IRCA and the INA. Subcontractor understands and agrees to provide only workers that have confirmed legal eligibility to perform services as employees in the United States.

Subcontractor agrees that it must have a properly completed Form I-9, Employment Eligibility Verification, for each employee who will perform work on the project. Subcontractor shall also maintain photocopies of all supporting employment eligibility and identity documentation for all employees who will perform work on the project. Subcontractor shall provide redacted photocopies of the properly complete Form I-9 and supporting employment eligibility and identity to the Contractor for each employee who will work on the project, prior to the employee beginning work on the project.

Subcontractor shall provide Contractor with a certification letter stating that Subcontractor has complied with the verification requirements as described in this section. The certification letter shall list the names of the employees who will work on the project.

Subcontractor shall create and implement a compliance plan which shall contain reasonably detailed description of Subcontractor's plan for complying with all applicable immigration laws as described in this section.

During the project, it may be necessary for an independent third party auditor to conduct an audit of the Subcontractor's Form I-9 for compliance, and review copies of the employment eligibility and identity documentation maintained to the extent required in this section for each of the Subcontractor's employees. Should an audit be deemed necessary by the Contractor, Subcontractor shall cooperate with Contractor and third party auditor, provide the Contractor and auditor with access to such documentation and personnel as may be necessary to complete any such certification, review or audit. Subcontractor shall immediately resolve any issues, problems or other circumstances of non-compliance revealed in any such review or audit; provided that, in no event shall Contractor's rights and remedies, including its right to terminate this contract immediately, be limited hereunder as a result of the resolution of any such issue, problem or circumstance of non-compliance.

In addition to any other rights that Contractor may have pursuant to the contract, at law or in equity, Contractor may, in its sole discretion, terminate this contract immediately if, at any time during the term, (1) Subcontractor violates or is in breach of any provision of this section or (2) the Department of Homeland Security or any other government agency or authority determines that the Subcontractor has not complied with any of the U.S. immigration laws.

**Date:**
**Construction Agreement – Exhibit F-2**

**Wal-Mart Store & Location: - Wal-Mart #6588 - Slidell**

The undersigned, _BEVERLY CONST._ ("Subcontractor"), has reviewed the Form I-9s for the employee(s) of _BEVERLY CONST._ ("Subcontractor") identified below who are or will be performing work on the above referenced project (the "Project") pursuant to that certain Construction Agreement ("Contract") between Wal-Mart Stores, Inc. and Journeyman Construction, Inc.. Such review has been conducted pursuant to and in accordance with the Contract. In connection with such review, the undersigned has reviewed copies of employment eligibility and identity documentation for each such individual to the extent required to be maintained pursuant to the Contract or otherwise maintained by the Company in accordance with its policies.

| **Name of Individual** | **Start Date on Project** |
|---|---|
| _SEE ATTACHED Exhibit F-2_ | |

The undersigned hereby certifies that the Company has verified the employment eligibility and identity of the above referenced individuals performing work on the Project pursuant to Form I-9 requirements, has correctly completed the relevant sections of the Form I-9s for such individuals (and to the extent that any violations are discovered that are of a nature that, in the undersigned's reasonable judgment, are eligible for cure, such violations have been corrected to the extent possible) is in compliance with all applicable Immigration Laws (as defined in the Contract) with respect to such individuals. This Certification has been completed within seventy-two (72) hours after the above referenced individuals started work on the Project.

This Certification may be delivered to and relied upon by Journeyman Construction, Inc. and Wal-Mart Stores, Inc.

The accuracy of the foregoing statements and information is confirmed and this document is signed.

This _14_ day of _May_, 20_14_.

Subscribed and sworn to before me
this _14_ day of _May_, 20_14_.

_____
Notary Public

My Commission Expires: _Death_

Subcontractor _BEVERLY CONSTRUCTION_
BY: _Kennen Schmitt_

_____
Authorized Representative of Subcontractor

Construction Agreement - Exhibit F-2
14-0017 Walmart I-9 Forms Submitted

| | |
|---|---|
| Brown | Delwin |
| Choppin | James |
| Disoso | Troy |
| Dupre | Davis |
| Dupre | Byron |
| Ibarra | Aerick |
| Latulippe | Gerard |
| Leblanc | Perry |
| Martinez | Ross |
| Martinez | Giovanny |
| McKelvey | Jason |
| McNeely | Ryan |
| Moore | Kelvin |
| Taylor | Chrietopher |
| Tillotson | Jordan |
| Woodruff | Richard |